UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| TODD A. BARNHARDT and | ) | Case No. 1-19-13897-cjf |
| STACY R. BARNHARDT, | ) | |
| | ) | |
| Debtors. | ) | |

_____

| | | |
|---|---|---|
| PATRICK S. LAYNG, | ) | |
| United States Trustee, | ) | |
|       Plaintiff, | ) | Adv. No. 20- |
| v. | ) | |
| | ) | |
| TODD A. BARNHARDT and, | ) | |
| STACY R. BARNHARDT, | ) | |
|       Defendants. | ) | |

## COMPLAINT OBJECTING TO DEBTORS' DISCHARGE

NOW COMES, the Plaintiff, Patrick S. Layng, United States Trustee for the Western

District of Wisconsin, by his attorney, Jennifer K. Niemeier, and alleges the following for his

complaint objecting to the discharge of the defendants, Todd A. Barnhardt and Stacy R. Barnhardt:

### BRIEF SUMMARY

Prior to filing bankruptcy, the Defendants owned and operated a daycare related business:

LMLC Holdings Inc.  LMLC Holdings was the sole owner of LMLC Franchising LLC and LMLC

Management LLC.  LMLC Franchising sold LMLC daycare franchises and LMLC Management

offered management services for the LMLC daycare franchises. In the course of selling and

managing daycare franchises, the Defendants diverted millions of dollars in franchise investments

through their LMLC businesses, and further defrauded creditors through the transfer of assets in the

one year before filing their bankruptcy case. The Defendants falsified the LMLC businesses' books

and records and have failed to satisfactorily explain the disposition of the funds diverted to the

LMLC businesses. Further, the Defendants' bankruptcy schedules contain false oaths specifically intended to mislead creditors. The Defendants are not entitled to a discharge pursuant to 11 U.S.C. §§ 727(a)(2), 727(a)(3), 727(a)(4) and 727(a)(5).

## JURISDICTION AND VENUE

1.      This is an objection to the Defendants' discharge in a case arising under Title 11 of the United States Code and, as such, this is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(J).

2.      The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a) because this proceeding arises in and is related to the Defendants' bankruptcy case, which is pending in this Court.

4.      The United States Trustee consents to the entry of final judgments and orders by the Bankruptcy Court.

## THE PARTIES

5.      The Plaintiff, Patrick S. Layng, is the United States Trustee for the Western District of Wisconsin.

6.      The Plaintiff is authorized to bring this action pursuant to 28 U.S.C. § 586(a)(5) and 11 U.S.C. §§ 307 and 727(c)(1).

7.      The Defendants, Todd A. Barnhardt and Stacy R. Barnhardt ("Defendants"), are the debtors in case number 19-13897, a chapter 7 case that is pending in this Court.

## FACTS

8.      The Defendants filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on November 20, 2019.

9.      The Defendants filed their schedules and statement of financial affairs on

December 4, 2019.

10.     The Defendants signed their petition, schedules, and statement of financial affairs

under penalty of perjury.

11.     The Defendants' schedule E/F lists $4,247,737.16 in unsecured debt.

12.     The Defendants' schedule I states that Mr. Barnhardt is unemployed and receives $0

in monthly income, and that Mrs. Barnhardt is employed as an administrative assistant and earns

$1,802.45 in monthly income.

13.     The Defendants' schedule J lists monthly expenses of $4,840, leaving the Debtors

with a monthly deficit of <$3,192>.

14.     In response to the Statement of Financial Affairs ("SOFA") question 4, the

Defendants disclosed combined yearly income as follows: $109,265.40 of year-to-date income in

2019; $258,870.20 in 2018; and $8,007.70 in 2017.

15.     James Block ("Trustee Block") was appointed as the Chapter 7 trustee in the

Defendants' bankruptcy case and, on December 4, 2019, Trustee Block convened a section 341

meeting of creditors in the bankruptcy case, where the Defendants provided testimony under oath.

16.     The Defendants testified at their section 341 meeting that their petition, schedules,

and statements were true and correct.

17.     The Defendants filed an amended schedule E/F on April 8, 2020, reducing the

amount owed to creditors to $1,202,913.

18.     On May 19, 2020, the Defendants again filed an amended schedule E/F, increasing

the total amount owed to unsecured creditors to $7,047,168.

19.     The Defendants also amended their SOFA question 4 to increase their 2019 year-to-

date income to $121,490.48,

20.     The Defendants also amended question 5 to list an additional $10,270 of income in

2019 and $253,501.89 in 2017.

21.    On May 20, 2020, the Defendants appeared for a Rule 2004 Examination, conducted

by the United States Trustee, and provided testimony under oath ("2004 Exam").

22.    To date, no further amendments to the bankruptcy schedules or related documents

have been filed.

**Defendants' Business Interests**

23.    The Defendants disclosed in response to question 27 on their SOFA that they had

an ownership interest or connection to the following companies during the four years prior to filing

their case: LMLC Holdings, Inc.; Okoca Solutions, LLC ("Okoca"); Sconnies, LLC ("Sconnies");

LMLC Management, LLC ; LMLC Franchising, LLC; Little Minds Learning Center, LLC; Little

Minds Learning Center; Little Minds Learning Center – Woodbury LLC; Little Minds Learning

Center – Holman, LLC; Little Minds Learning Center – Littleton, LLC; Little Minds Learning

Center -Onalaska, LLC; Little Minds Learning Center – Omaha, LLC; Little Minds Learning Center

– Chicago, LLC; Little Minds Learning Center – Gilbert, LLC; Little Minds Learning Center –

Ralston, LLC; and Little Minds Learning Center And Development, LLC (excepting Okoca and

Sconnies, collectively the "LMLC businesses"). The LMLC businesses stopped operating during

2018 and 2019.

24.    In response to question 19 on schedule A/B, the Defendants disclosed that they

each own 29.125% of LMLC Holdings, Inc ("Holdings").[1]

25.    Holdings owns 100% of Franchising, Management, Little Minds Learning Center,

LLC, Little Minds Learning Center - Onalaska, LLC, Little Minds Learning Center – Holmen, LLC

Little Minds Learning Center – Gilbert, LLC, Little Minds Learning Center – Ralston, LLC and

---

[1] Three other individuals, Trina Sandlie, Devin Box and Corita Schilling, own the remaining 41.75% of
Holdings.

LMLC Learning and Development, LLC.[2]

26.     The Defendants further disclosed that Holdings owns 51% of: Little Minds Learning Center – River Falls, LLC ("River Falls"), Little Minds Learning Center – Littleton, LLC ("Littleton"), Little Minds Learning Center – Omaha, LLC ("LMLC Omaha"), Little Minds Learning Center – Chicago, LLC ("LMLC Chicago"), and Little Minds Learning Center -Woodbury, LLC ("LMLC Woodbury").

27.     The Defendants own 100% of Okoca, a consulting business, and Sconnies, a closed retail business.

28.     The Defendants' second amended schedule E/F disclosed unsecured nonpriority debts totaling $7,047,168.  Of the $7,047,168 scheduled, $6,793,315 are debts directly related to the LMLC businesses.

## LMLC Businesses

29.     The LMLC businesses were engaged in the business of owning and operating day care centers.

30.     LMLC Franchising ("Franchising") sold LMLC daycare franchises to potential investors, and LMLC Management ("Management") offered management services to the various LMLC franchises.

31.     Little Minds Learning Center, LLC ("Original LMLC"), was the first daycare operation the Defendants opened, and it operated in Hudson, Wisconsin.

32.     The Defendants then used the Original LMLC daycare as the business model to create the Franchising business.

---

[2] LMLC Holdings filed for chapter 7 bankruptcy relief on (November 20, 2019, 19-13899); LMLC Franchising filed for chapter 7 bankruptcy relief on (November 20, 2019, 19-13901); and LMLC Management filed for chapter 7 bankruptcy relief on (November 20, 2019, 19-13900).

33.    Holdings is the parent company that owns Franchising, Management, and interests in various LMLC daycares.

34.    Mr. Barnhardt acted as the President and Director of the Board of Directors of Holdings.

35.    Mr. Barnhardt has represented that he holds the following degrees: Associate's Degree in Instructional Technology and Military Science; Associate's Degree in Criminal Justice; Bachelor's Degree in Public Administration; Master's Degree in Instructional and Performance Technologies; and a Ph.D. in Industrial and Organizational Psychology.

36.    The Franchising business targeted potential investors to purchase LMLC daycare franchise licenses.

37.    The Franchising business model targeted foreign investors seeking to obtain permanent residence in the United States through the EB-5 immigrant investor visa program, which allows immigrants to obtain a visa to the United States if they can establish that have made a $500,000 capital investment to a business they own in the United States.[3]

38.    Mr. Barnhardt acted as the Chief Manager of Franchising, where he sought foreign investors by providing them with a market analysis that identified potential locations in need of daycare services.

39.    The Management business purported to offer comprehensive management services to the foreign Franchising investors, who were often located overseas and therefore unable to personally oversee a business in the United States.

40.    Mr. Barnhardt acted as Chief Manager of Management and handled all aspects of

---

[3] The EB-5 "Targeted Employment Area Investment" requirements increased the minimum investment amount from $500,000 to $900,000 on November 21, 2019, the day after the Defendants filed their bankruptcy case.

opening and operating the franchises. As Chief Manager, Mr. Barnhardt opened a bank account for

each franchise, instructed the franchise owner to fund the bank account with a capital investment,

and then controlled transfers in and out of the franchise's bank account.

41.     Mrs. Barnhardt testified at the rule 2004 Exam that she acted as a board member for

the Holdings Board of Directors. She also acted as the operations manager for Management, and

she oversaw the franchises' compliance with daycare licensing requirements.

42.     Mr. Barnhardt was the individual responsible for keeping corporate books and

records. Mr. Barnhardt was also responsible for reconciling bank accounts for the franchises under

his management and for his own LMLC businesses.

43.     The LMLC businesses received over $2 million in loans from individuals.

44.     Mr. Barnhardt signed the loan agreements on behalf of the LMLC businesses.

**Misappropriation of Investor Funds**

45.     The Defendants frequently did not use a franchise's capital investment for the

intended franchise, but instead diverted the majority of the franchise's investments into their LMLC

businesses.[4]

46.     As part of their scheme, the Defendants funneled new franchise investor funds

through their LMLC businesses to older franchise companies in an attempt to shore up the older

franchise companies.

47.     By funneling new investor funds to older franchise companies, the Defendants

prevented the older franchise owners from becoming aware of the misappropriation of their

investment funds.

---

[4] Twelve adversary complaints were filed by creditors under section 523 of the Bankruptcy Code alleging fraud. These include Case Nos. 20-00014, 20-00023, 20-00024, 20-00025, 20-00026, 20-00027, 20-00028, 20-00029, 20-00030, 20-00031, 20-00032, and 20-00033.

48.     At their section 341 meeting, Mr. Barnhardt claimed that the transfers of franchise funds to his LMLC businesses were "loans."

49.     The Plaintiff requested that the Defendants produce any and all loan agreements or evidence of their right to treat the franchise investor funds as loans.

50.     The Defendants have not produced any loan agreements or evidence of their right to receive the franchise investor funds as loans.

51.     There are twelve adversary proceedings pending in the Defendants' bankruptcy case that allege that Mr. Barnhardt diverted franchise funds without any knowledge or permission of the franchise owners.

52.     The Defendants' business scheme is a type of Ponzi scheme, whereby new franchise investments were redirected to older franchises in an attempt prop up the older franchises. Though this is not a classic Ponzi scheme, where investors receive a return on their investment, it is similar to a Ponzi scheme because new franchise investments were diverted to older franchises to continue attempts at developing the older franchises.

53.     In total, the Defendants sold approximately 30 franchises and managed most of them. Of the franchises under the Defendants' Management, only a few of the businesses opened and operated.

**MM Education Franchises**

54.     On January 12, 2019, Mr. Barnhardt executed franchise agreements with Yaseen and Mohamed Jaffer, and their business MM Education, LLC ("MM Education"), for franchises to be opened in Katy, Texas, and Missouri City, Texas.

55.     The franchising agreement does not give Mr. Barnhardt authority to borrow money from MM Education.

56.

8

57.      On January 12, 2019, Mr. Barnhardt executed an agreement through Management to launch and manage the MM Education franchises.

58.      The management agreement does not give Mr. Barnhardt authority to borrow money from MM Education.

59.      Mr. Barnhardt opened US Bank account number x2187 on behalf of MM Education ("MM Education Account").

60.      Mr. Barnhardt had sole signatory authority and access to the MM Education Account from the time it was opened to November 13, 2019, when the account was closed.

61.      Throughout May, June, and July, of 2019, the Jaffers funded the MM Education Account with a Capital investment of $471,750 for the sole purpose of funding the launch of the MM Education franchises.

62.      The Jaffer's capital investment was not used to launch the MM Education franchises, but was primarily diverted to the Defendants' Original LMLC business bank account.

63.       The Jaffers were unable to receive visas through the EB-5 program because they did not receive proof of their investment from Mr. Barnhardt.

64.      As a result, the Jaffers are now subject to the increased investment requirements of the EB-5 program, which took effect November 21, 2019, one day after the Defendants filed their bankruptcy petition.

**Diversion of MM Education Capital Investment to Original LMLC**

65.      Mr. Barnhardt transferred $440,700 of MM Education funds to the Original LMLC bank account via transfers made between May and July of 2019.

66.      The Original LMLC bank account had a negative balance before the first transfer from MM Education.

67.      The MM Education funds transferred to the Original LMLC account were used to

fund the Defendants' own LMLC daycare business and to pay the Defendants' wages.

68.     Upon information and belief, Mr. Barnhardt exercised sole direction and control of

the Original LMLC bank account.

**LMLC Businesses Books and Records**

69.     Mr. Barnhardt testified at the 2004 Exam that he was primarily responsible for

maintaining the books and records of both the Defendants' LMLC businesses and the Management

franchises.

70.     Nousha Sabet was titled the Chief Financial Officer of Franchising and Management.

71.     However Mr. Barnhardt testified that Ms. Sabet did not direct bank account activities

and did not maintain the QuickBooks accounts.

72.     Ms. Sabet issued 1099s to LMLC employees but relied on the books and records

maintained by Mr. Barnhardt to issue the 1099s.

73.     At the 2004 Exam, Mr. Barnhardt testified that he was the person responsible for

managing the QuickBooks accounts and reconciling the bank statements for the LMLC businesses

and the franchises.

74.     Mr. Barnhardt also testified that he is proficient at using QuickBooks and assisted

with writing a "how to" manual for reading profit statements, balance sheets, income statements,

and how they interact.

75.     Mr. Barnhardt, as President of Holdings and Chief Manager of Franchising and

Management, did not track all funds received from loans and investors and how those funds were

spent.

76.     The United States Trustee requested that the Defendants produce business records

for the LMLC businesses and franchises, including tax returns, bank statements, general ledgers,

profit and loss statements, and balance sheets.

77.    In January 2020, the Defendants responded and provided, among other documents, general ledgers ("Original General Ledgers") for Holdings and Management along with bank statements for Holdings and Management.

78.    The Original General Ledgers for Holdings and Management were starkly different than their respective bank statements.

79.    In response to the United States Trustee's identification of incomplete general ledgers, the Defendants provided updated general ledgers ("Updated General Ledgers") for Holdings, Management, and Franchising.

80.    The Updated General Ledgers for Holdings and Management had substantial portions of the transactions observed on the Original General Ledgers removed.

81.    The Defendant did not keep up with reconciling the bank statements and did not keep track of all of the business records for any of the LMLC businesses or franchises in QuickBooks.

82.    To date, the United States Trustee cannot determine which set of general ledgers are accurate reflections of the LMLC businesses' books and records and is unable to ascertain the disposition of the investor funds diverted to the LMLC businesses.

83.    LMLC businesses received in excess of $7 million from franchises and loans.

84.    The Defendant has not provided franchise owners with any accounting of where their funds went.

85.    The failure to maintain records of how these funds were spent is unreasonable under the circumstances of this case.

**Failure to Explain Loss of Assets**

86.    As outlined on schedule E/F (as amended), the Defendants report $6,793,315 of unsecured debts related to the LMLC businesses.

87.    The corporate bank records for the LMLC businesses and franchises show that the funds are gone.

88.    Mr. Barnhardt is the individual who was responsible for managing and accounting for the funds received and disbursed from the LMLC businesses and franchises.

89.    The Defendants have failed to explain what happened to all of the franchise funds that were diverted to his LMLC businesses.

**Defendants' Income**

90.    The Defendants filed pay stubs along with their bankruptcy schedules and included two pay stubs for Mr. Barnhardt.

91.    Mr. Barnhardt's paystubs totaled $8,189.50 and were received in October 2019, the month prior to the Defendants' bankruptcy filing.

92.    The Defendants' schedule I asserts that Mr. Barnhardt is unemployed and receives no income.

93.    On May 20, 2020, Mr. Barnhardt testified at the 2004 Exam that he was employed and was doing consulting work.

94.    Mr. Barnhardt further testified that he received approximately $10,000 for consulting work in the fall and winter of 2019, and then began to receive approximately $1,000 per week in February 2020 for a consulting project.

95.    Mr. Barnhardt testified that he generally works forty hours a week.

96.    Mrs. Barnhardt testified at the 2004 Exam that she was not aware of any income earned by Mr. Barnhardt since filing their petition.

97.    Upon information and belief, the Defendant's reside in the same household.

12

## COUNT I

**11 U.S.C. § 727(a)(2)(A) – Transfer of Property Within One Year of Filing Date**

98.     The Plaintiff incorporates the allegations set forth in the preceding paragraphs as though fully set forth in this Count.

99.     Section 727(a)(2)(A) of the Bankruptcy Code requires denial of a debtor's discharge where "the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with the custody of the property…transferred, removed, destroyed, mutilated, or concealed … (A) property of the debtor, within one year before the date of the filing of the petition.

100.     "Property of the debtor includes not only property nominally held by the debtor, but also property held by the debtor's alter ego," such as the debtor's closely held business. *Singh v. Singh (In re Singh)*, BAP No. CC-17-1353-FLS, 2019 Bankr. LEXIS 806, at 14 (9th Cir. BAP Mar. 14, 2019).

101.     The Defendants' LMLC businesses were the Defendants' alter egos, in that the Defendants owned a majority interest in the LMLC businesses, had sole control of the businesses, directed the transfers of funds in and out of the businesses and to themselves, ignored corporate formalities, and personally benefited from the businesses. *Id* at 15.

102.     Within one year of the petition date, the Defendants transferred $471,500 from MM Education to the Original LMLC, their alter ego, with an intent to hinder, delay, and defraud MM Education.

103.     The Defendants were insolvent when the MM Education funds were diverted to, and spent by, their business.

104.     Within one year of the petition date, the Defendants diverted new franchise investments to their LMLC businesses, and then transferred the funds to older franchises to prevent business owners from discovering the Defendants' misappropriation of funds.

105.    The Defendants were insolvent when the new franchise investments were diverted

to the LMLC businesses.

WHEREFORE, Plaintiff, the United States Trustee, respectfully requests that this Court

enter an order denying the Defendants' discharge pursuant to 11 U.S.C. § 727(a)(2)(A) and granting

any additional appropriate relief.

COUNT II

**11 U.S.C. § 727(a)(3) – Failure to Keep Adequate Records**

106.    The Plaintiff incorporates the allegations set forth in the preceding paragraphs as

though fully set forth in this Count.

107.    Section 727(a)(3) of the Bankruptcy Code provides that the Court shall grant the

debtor a discharge, unless the debtor has concealed, destroyed, mutilated, falsified, or failed to keep

or preserve any recorded information, including books, documents, records, and papers, from which

the debtor's financial condition or business transactions might be ascertained, unless such act or

failure was justified under all of the circumstances of the case.

108.    The Defendants provided the United States Trustee with two sets of general ledgers

for Management and Holdings that are substantially different. One, if not both, of the general

ledgers is falsified.

109.    The Defendants failed to keep accurate recorded information from which the

information about their financial condition and business transactions might be ascertained.

110.    The Defendants have offered no reasonable justification for the failure to properly

keep and maintain business records.

111.    Despite failing to keep and maintain these records, the Defendant now seeks to

discharge his debts arising from the LMLC businesses.

WHEREFORE, Plaintiff, the United States Trustee, respectfully requests that this Court

enter an order denying the Defendants' discharge pursuant to 11 U.S.C. § 727(a)(3) and granting any

additional appropriate relief.

## COUNT III

### 11 U.S.C. § 727(a)(4)(A) – Knowingly and Fraudulently Making a False Oath

112.    The Plaintiff incorporates the allegations set forth in the preceding paragraphs as

though fully set forth in this Count.

113.    Section 727(a)(4)(A) of the Bankruptcy Code provides that the Court shall deny a

debtor's discharge if, among other things, a debtor "knowingly and fraudulently, in or in connection

with the case … (A) made a false oath or account."

114.    The Defendants signed their bankruptcy schedules under penalty of perjury.

115.    The Defendants falsely testified at their section 341 meeting regarding the accuracy

of their schedules and statement of financial affairs.

116.    The Defendants failed to disclose Mr. Barnhardt's employment and income on

schedule I, despite the fact that Mr. Barnhardt was employed as a consultant before and after filing

the bankruptcy petition.

117.    In response to SOFA questions 4 and 5, the Defendants failed to disclose all of their

2019 and 2017 income. It wasn't until nearly six months after filing their petition, and after the

United States Trustee identified a substantial understatement of income, that the Defendants

amended their SOFA questions 4 and 5 to increase their combined 2017 income from $8,007.70 to

$261,509.59, and their combined 2019 income increased from $109,265.40 to $131,760.48.

118.    The Defendants' original schedule E/F identified $4,247,737.16 in unsecured debts.

On April 8, 2020, the Defendants amended schedule E/F to reduce their unsecured debts to

$1,202,913. On May 19, 2020, the Defendants again amended schedule E/F to increase their

unsecured debts to $7,047,168. It is unclear which of these schedules is true and correct.

119.    The Defendants knowingly and intentionally failed to report their income and disclose the true nature of their unsecured debts in an attempt to withhold information from creditors that is relevant to the Defendants' financial affairs.

WHEREFORE, Plaintiff, the United States Trustee, respectfully requests that this Court enter an order denying the Defendants' discharge pursuant to 11 U.S.C. § 727(a)(4)(A) and granting any additional appropriate relief.

## COUNT IV

### 11 U.S.C. § 727(a)(5) – Failure to explain loss of assets

120.    The Plaintiff incorporates the allegations set forth in the preceding paragraphs as though fully set forth in this Count.

121.    Section 727(a)(5) of the Bankruptcy Code provides that the Court shall grant the debtor a discharge, unless the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

122.    The Defendants' LMLC businesses received over $5.8 million from loans and franchise investors but have failed to provide an accounting of how the funds were spent, and the funds are gone.

123.    The Defendants have provided conflicting books and records that make it impossible for the United States Trustee to ascertain how the LMLC funds were disbursed.

WHEREFORE, Plaintiff, the United States Trustee, respectfully requests that this Court enter an order denying the Defendants' discharge pursuant to 11 U.S.C. § 727(a)(5) and granting any additional appropriate relief.

Dated:  June 26, 2020                           Respectfully submitted,

                                                PATRICK S. LAYNG
                                                United States Trustee

                                    By:      /s/ Jennifer K. Niemeier
                                             JENNIFER K. NIEMEIER
                                             Trial Attorney

Office of the United States Trustee
780 Regent Street
Suite 304
Madison, Wisconsin 53715
(608) 264-5522
Jennifer.Niemeier@usdoj.gov